IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| **LEONARD E. DORSEY,** | ) |
| | ) |
|     **Plaintiff,** | ) |
| | ) |
| v. | ) CIVIL ACTION NO.: 2:05-CV-1034-ID-VPM |
| | ) |
| **ANTHONY CLARK,** *et al.*, | ) |
| | ) |
|     **Defendants.** | ) |

## DEFENDANTS' SPECIAL REPORT

COME NOW the Defendants Covington County Sheriff Anthony Clark, and former Interim Jail Administrator Deputy Kevin Smith, and submit their Special Report to the Court as follows:

### INTRODUCTION

The Plaintiff in this action, Leonard E. Dorsey, filed his Complaint on October 28, 2005. The Complaint alleges various violations of his Fifth, Ninth, and Fourteenth Amendment rights. On November 1, 2005, this Court ordered the Defendants to submit a Special Report concerning the factual allegations made by the Plaintiff in his Complaint.

### PLAINTIFF'S ALLEGATIONS

It is extremely difficult to determine, from the Plaintiff's Complaint, exactly what his allegations and claims are. However, as best defense counsel is able to determine, the Plaintiff alleges the following: (a) unlawful detention in violation of his 5th Amendment rights; (b) unlawful discrimination in violation of his 9th Amendment rights; and (c) unlawful detention in violation of his 14th Amendment Equal Protection rights.

**DEFENDANTS' RESPONSE TO PLAINTIFF'S ALLEGATIONS**

Defendants Sheriff Anthony Clark and former Interim Jail Administrator Deputy Kevin Smith deny the allegations made against them by the Plaintiff as said allegations are untrue and completely without basis in law or fact.

**I.     FACTS**

The Plaintiff was incarcerated in the Covington County Jail on April 26, 2005 for failure to appear.  (See Inmate File of Leonard Eugene Dorsey, (hereafter, "Inmate File"), attached hereto as Exhibit A and incorporated herein as if fully set forth.)

At the time of the Plaintiff's incarceration, the Covington County Jail had an inmate grievance procedure.  (Affidavit of Anthony Clark dated December ____, 2005 (hereafter, "Clark Aff."), attached herewith as Exhibit B and incorporated herein as if fully set forth, at ¶ 4; Affidavit of Kevin Smith dated December ____, 2005 (hereafter, "Smith Aff."), attached herewith as Exhibit C and incorporated herein as if fully set forth, at ¶ 4.)  Grievances were required to be in writing and could be filed with any member of the jail staff.  Id.  Copies of grievance forms are kept in the inmate's jail file.  Id.  Jail policy provided an exception that allowed emergency grievances to be made orally.  Id.  It was a violation of jail policy to deny an inmate access to the grievance procedure.  (Clark Aff. at ¶ 6; Smith Aff. at ¶ 6.)  The Plaintiff was aware of the grievance procedure.  (Clark Aff. at ¶ 5; Smith Aff. at ¶ 5.)

Defendant Sheriff Anthony Clark has no personal involvement in the day-to-day operations of the Covington County Jail.  (Clark Aff. at ¶ 8.)  Sheriff Clark has delegated these responsibilities to the jail administrator.  Id.  Sheriff Clark has no personal knowledge of the facts of the Plaintiff's Complaint.  (Clark Aff. at ¶ 3.)

II.  **LAW**

    A.  **The Plaintiff's Claims are Barred by the Prison Litigation Reform Act for his Failure to Exhaust Administrative Remedies.**

The Prison Litigation Reform Act requires exhaustion of all available administrative remedies before an inmate may file a lawsuit under 42 U.S.C. § 1983. See 42 U.S.C. § 1997e(a); Booth v. Churner, 532 U.S. 731, 733-34 (2001) (stating that 42 U.S.C. § 1997e(a) "requires a prisoner to exhaust 'such administrative remedies as are available' *before* suing over prison conditions."). Exhaustion is required for "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). The Plaintiff in this case has not exhausted all administrative remedies available to him; he has failed to follow the State Board of Adjustments grievance process through to conclusion.

Though the Plaintiff has filed a grievance with the State Board of Adjustments, that grievance procedure is still in the early stages and has not yet been finally concluded. See Brown v. Tombs, 139 F.3d 1102, 1103-04 (6th Cir. 1998) (requiring prisoners to affirmatively show that they have exhausted administrative remedies). Alabama law provides the opportunity to file a claim and proceed before the Alabama State Board of Adjustment pursuant to Ala. Code § 41-9-60 et seq. Because the State provides an administrative remedy that the Plaintiff failed to exhaust, the Plaintiff's claims are barred by 42 U.S.C. § 1997e(a). See Alexander v. Hawk, 159 F.3d 1321, 1326-27 (11th Cir. 1998) (affirming dismissal of present action due to failure to exhaust administrative remedies).

    B.  **The Defendants, in Their Official Capacities, Are Entitled to Judgment in Their Favor as a Matter of Law.**

In his Complaint, the Plaintiff has not designated whether he is suing the Defendants in their official or individual capacities. Out of an abundance of caution, to the extent the Plaintiff's

3

Complaint can be construed as making official capacity claims, the Eleventh Amendment bars such claims. Additionally, these Defendants, in their official capacities, are not "persons" for purposes of 42 U.S.C. § 1983.

> **1. All official capacity claims against Sheriff Clark and Deputy Smith are barred by the Eleventh Amendment to the United States Constitution.**

The Plaintiff's official capacity claims against Sheriff Clark and Deputy Smith are due to be dismissed for lack of subject matter jurisdiction. Both Defendants, in his capacity as sheriff or jailer, is an executive officer of the State of Alabama. Therefore, a suit against these Defendants, in their official capacities, is a suit against the State of Alabama. See Hafer, 502 U.S. at 25; Lancaster, 116 F.3d at 1429; see also Kentucky v. Graham, 473 U.S. at 165-66. Because this suit is, in effect, a suit against the State of Alabama, the Eleventh Amendment to the United States Constitution bars the Plaintiff's claims under § 1983. See Free, 887 F.2d at 1557; see also Dean v. Barber, 951 F.2d 1210, 1215 n.5 (11th Cir. 1992); Carr v. City of Florence, 916 F.2d 1521, 1525 (11th Cir. 1990) (citing Parker v. Williams, 862 F.2d 1471, 1476 (11th Cir. 1989) and upholding the proposition that a deputy sued in his official capacity is entitled to Eleventh Amendment immunity). Thus, this Court lacks subject matter jurisdiction over these claims.

> **2. The Defendants, in their official capacities, are not "persons" for purposes of 42 U.S.C. § 1983.**

42 U.S.C. § 1983 prohibits a person, acting under color of law, from depriving another of his rights secured by the United States Constitution. 42 U.S.C. § 1983. The United States Supreme Court has held that a state official sued in his or her official capacity, is not a "person" under § 1983. Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989). Thus, any claims against Sheriff Clark or Deputy Smith, in their official capacities, are due to be dismissed because the Defendants are not "persons" under § 1983, and therefore, these claims fail to state a

claim upon which relief can be granted. Id.; Carr, 916 F.2d at 1525 n.3 (citing Will and noting that, in addition to entitlement to Eleventh Amendment immunity, "neither a State nor its officials acting in their official capacities are a 'person' under § 1983").

### C. The Defendants are Entitled to Qualified Immunity.

In their individual capacities, all of the Defendants are entitled to qualified immunity and a dismissal of Plaintiff's claims unless they violated his clearly established constitutional rights of which a reasonable person would have known. Lancaster, 116 F.3d at 1424. Qualified immunity is a protection designed to allow government officials to avoid the expense and disruption of trial. Ansley v. Heinrich, 925 F.2d 1339, 1345 (11th Cir. 1991). The Eleventh Circuit Court of Appeals has observed, "[t]hat qualified immunity protects governmental actors is the usual rule; only in exceptional cases will government actors have no shield against claims made against them in their *individual capacities*." Lassiter v. Alabama A & M Univ., 28 F.3d 1146 (11th Cir. 1994) (en banc) (emphasis in original) (footnote omitted). In the light of pre-existing law the unlawfulness must be apparent. Anderson v. Creighton, 483 U.S. 635, 640 (1987). Mere statements of broad legal truisms, without more, are not sufficient to overcome qualified immunity. Post v. City of Ft. Lauderdale, 7 F.3d 1552, 1557 (11th Cir. 1993).

Once a defendant has asserted the defense of qualified immunity, the threshold inquiry a court must undertake is whether the plaintiff's allegations, if true, establish a constitutional violation. Saucier v. Katz, 533 U.S. 194, 201 (2001). This initial inquiry is whether "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Id. (citing Siegert v. Gilley, 500 U.S. 226, 232 (1991)). The second inquiry is, if a constitutional violation is stated, were these rights "clearly established" to the degree that these Defendants had "fair warning" that their conduct violated

5

the plaintiff's constitutional rights?  Willingham v. Loughnan, 321 F.3d 1299, 1301 (11th Cir. 2003).

In making an assessment of whether the particular conduct of these Defendants was clearly established as being violative of constitutional dictates, the reviewing court must examine the state of law at the time the alleged deprivation occurred.  See Rodgers v. Horsley, 39 F.3d 308, 311 (11th Cir. 1994).  A constitutional right is clearly established only if its contours are "sufficiently clear that a reasonable official would understand that what he is doing violates that right."  Anderson, 483 U.S. at 640; Lancaster, 116 F.3d at 1424.  "In this circuit, the law can be 'clearly established' for qualified immunity purposes only by decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose."  Jenkins v. Talladega Bd. of Educ., 115 F.3d 821, 827 (11th Cir. 1997) (en banc) (citations omitted).

The instant Plaintiff alleges that he was unlawfully detained and discriminated against in violation of his 5th, 9th and 14th Amendment rights.  The Defendants are entitled to judgment in their favor as a matter of law on these claims for three reasons.  First, these Defendants' policies and actions were not deliberately indifferent to a constitutional right of the Plaintiff.  Second, the Defendants did not promulgate policies that caused the Plaintiff's alleged constitutional deprivations.  Third, no clearly established law provided these Defendants with "fair warning" that their conduct was unlawful.

> **1. These Defendants did not violate any of the Plaintiff's federally protected rights.**

The Plaintiff cannot meet his first burden under the qualified immunity standard – he cannot show a violation of his federal rights.  Further, Defendants therefore entitled to qualified immunity for three reasons.  First, none of the Defendants can be held liable on a theory of *respondeat superior*.  Second, there are no allegations of any wrongdoing on the part of the

6

Defendants. Third, there is no causal connection between the policies promulgated by the Defendants and the Plaintiff's alleged injuries.

### (a) The Defendants did not violate the Plaintiff's Fifth Amendment rights.

The Plaintiff alleges violations of his Fifth Amendment rights. Defendants assume that the Plaintiff is referring to the Due Process Clause of the Fifth Amendment, inasmuch as none of the other clauses and provisions of that Amendment seem to apply to the Plaintiff's situation. However, the Plaintiff does not indicate how he has been denied Due Process. Further, the Fifth Amendment's Due Process Clause does not apply to state and local governments, but rather applies only to the federal government. See Dowdell v. Chapman, 930 F. Supp. 533, 542 (M.D. Ala. 1996); Knoetze v. United States Dep't of State, 634 F.2d 207, 211 (5th Cir. 1981).[1] Thus, the Plaintiff's Fifth Amendment claims against are due to be dismissed.

### (b) The Defendants did not violate the Plaintiff's Ninth Amendment rights.

The Plaintiff alleges violations of his Ninth Amendment rights. However, the Plaintiff fails to indicate what rights "retained by the people" are being violated. Further, Plaintiff seems to be implicating his Fourteenth Amendment right to be free from discrimination. However, the Ninth Amendment has no direct relation to the Equal Protection rights found in the Fourteenth Amendment, being implicated primarily in cases addressing privacy rights, which the Plaintiff does not allege anywhere in his Complaint. Thus, the Plaintiff's Ninth Amendment claims against are due to be dismissed.

---

[1] See Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc) (decisions of the Fifth Circuit handed down before close of business on September 30, 1981 are binding precedent on the Eleventh Circuit).

     **(c)**  ***Respondeat Superior* cannot serve as a basis for § 1983 liability.**

  To the extent the Plaintiff seeks to impose vicarious liability on the Defendants, his claims are due to be dismissed. As noted previously, vicarious liability is not permitted under § 1983. See Monell, 436 U.S. at 691.

     **(d)**  **There is no allegation of any personal wrongdoing on the part of these Defendants.**

  There is no constitutional mandate that prisons or jails be made comfortable. Rhodes v. Chapman, 452 U.S. 337, 349 (1981). "Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." Price v. Johnston, 334 U.S. 266, 285 (1948). "Maintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees." Bell v. Wolfish, 441 U.S. 520, 546 (1979).

  To overcome the Defendants' entitlement to qualified immunity, the Plaintiff must prove that they were deliberately indifferent to his constitutional rights. Farmer v. Brennan, 511 U.S. 825, 836 (1994). As previously noted, however, Sheriff Clark has little or nothing to do with the day-to-day operations of the Covington County Jail. (Clark Aff. at ¶ 7.) Also, there is no allegation that Sheriff Clark had anything to do with the Plaintiff's incarceration or housing while in the jail.

  Turning to the Plaintiff's presumed unlawful detention claims, Deputy Kevin Smith, in his affidavit, states that the Plaintiff's is aggressive and combative, and he initiates and promotes conflict with the other inmates. (Smith Aff. at ¶ 7.) As a result of his hostility, the Plaintiff was housed in the various cell blocks in an effort to protect both his health and safety, and the health and safety of the other inmates. (Smith Aff. at ¶¶ 7-8.) Despite these precautions, the Plaintiff provoked and initiated physical confrontations with inmates in all of the cell blocks in which he

8

was house, including the work-release inmates. Id. Therefore, the Plaintiff was finally housed in the detention block, which has far fewer prisoners, and therefore is less crowded and offers less opportunity for the Plaintiff to initiate a violent incident. (Smith Aff. at 9.) However, the Plaintiff was placed in C-Block for his own safety and the safety of the other jail inmates, not as punishment, and at no time was the Plaintiff "locked down", but was given access to the day room and all of the amenities it provides. Id. The only difference between C-Block and the other cell blocks is that C-Block does not provide access to a telephone or a television. Id. However, Deputy Smith specifically informed the Plaintiff that he would provide him access to a telephone if he should require it. Id.

Finally, pursuant to an incident where another inmate assaulted the Plaintiff and broke his nose, the Plaintiff was given the opportunity to swear out a warrant on the other inmate, which warrant was served on the offending inmate. (Smith Aff. at 10.)

Based upon the foregoing the Plaintiff has failed to allege a violation of his federally protected rights – let alone a violation personally committed by these Defendants. Therefore, these Defendants are entitled to qualified immunity and judgment as a matter of law on the Plaintiff's claims.

### (e) There is no causal connection between any policy or custom promulgated by Defendant Sheriff Anthony Clark and the Plaintiff's alleged injuries.

The Eleventh Circuit has stated what is required to make out a § 1983 claim against a supervisor:

> Supervisory liability occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional deprivation. The causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so. The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences.

9

Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990) (citations omitted). The Eleventh Circuit, therefore, applies a three-prong test that the Plaintiff must satisfy to establish supervisory liability: (1) the supervisor's actions, either in training, promulgating policy, or otherwise, were deliberately indifferent to the Plaintiff's rights; (2) a reasonable person in the supervisor's position would know that his or her actions were deliberately indifferent; and (3) the supervisor's conduct was causally related to the subordinate's constitutional infringement. Greason v. Kemp, 891 F.2d 829, 836-37 (11th Cir. 1990); see also Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990) (citations omitted). The causal connection may be established where the supervisor's improper "custom or policy ... result[s] in deliberate indifference to constitutional rights." Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991) (citing Zatler v. Wainwright, 802 F.2d 397 (11th Cir. 1986)). "[T]he inadequacy of police training may serve as the basis for § 1983 liability *only* where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." City of Canton v. Harris, 489 U.S. 378, 388 (1989) (emphasis added). The Complaint fails to allege facts supporting any of these elements, and there is no evidence to support the allegations even if they were made.

Supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates "on the basis of *respondeat superior* or vicarious liability." Belcher v. City of Foley, 30 F.3d 1390, 1396 (11th Cir. 1994) (citation and quotation omitted).

First, this Defendant's policies and actions were not deliberately indifferent. There is no allegation that these Defendants had knowledge (either actual or constructive) of a training deficiency in the Covington County Jail or that the policies and/or customs of the jail would result in constitutional violations. Id. There is no allegation of widespread obvious, flagrant, rampant and continuous abuse by corrections officers. Id.

10

Second, there are no facts in the record from which a reasonable person could conclude that the conduct of these Defendants was deliberately indifferent. For instance, there are no allegations that the Plaintiff's incarceration in the detention block was in any way dangerous to his health, or presented any sort of risk to the Plaintiff other than the inconvenience of not having television access (telephone access was provided for).

Prison officials may be held liable for denying humane conditions of confinement only if they know that inmates face substantial risk of serious harm and disregard that risk by failing to take reasonable measures to abate it. Farmer v. Brennan, 511 U.S. 825, 837 (1994). There are no allegations in the Complaint at all to show that the Defendants were aware of any risk of harm to the Plaintiff – let alone a substantial risk of harm. Indeed, the Complaint does not even allege that Sheriff Clark was present or participated in any of the events complained of. Consequently, the Plaintiff has failed to meet the second element of supervisory liability under § 1983.

Regarding the third element of supervisory liability, there is no causal connection between the Defendants' conduct and the alleged constitutional deprivation. There is no evidence that Sheriff Clark or Kevin Smith failed to train the jail personnel.

The Plaintiff has failed to allege, and the facts do not show, the existence of the elements of supervisory liability under § 1983. See Greason, 891 F.2d at 836-37. Sheriff Clark cannot be held vicariously liable under § 1983. Monell, 436 U.S. at 694-95. Consequently, Sheriff Anthony Clark is entitled to qualified immunity and judgment in his favor as a matter of law. Saucier, 533 U.S. at 201.

### D. No Clearly Established Law Gave These Defendants Fair Warning That Their Conduct Was Unlawful.

The Plaintiff must show that clearly established law provided the Defendants with fair warning that his conduct was unlawful by either (1) pointing to a case with materially similar facts holding that the conduct engaged in was illegal; or (2) demonstrating that a pertinent federal statute

11

or federal constitutional provision are specific enough to demonstrate conduct was illegal, even in the total absence of case law. Storck v. City of Coral Springs, 354 F.3d 1307, 1317 (11th Cir. 2003) (citations omitted). The Eleventh Circuit has identified the latter method as an "obvious clarity" case. Vinyard v. Wilson, 311 F.3d 1340, 1350 (11th Cir. 2002) (footnote omitted). In order to show that the Defendants' conduct was unconstitutional with "obvious clarity," "the unlawfulness must have been apparent." Willingham, 321 F.3d at 1301. "Unless a government agent's act is so obviously wrong, in the light of pre-existing law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing, the government actor has immunity from suit." Storck, 354 F.3d at 1318 (quoting 28 F.3d at 1149).

As the Plaintiff has made no direct allegations with respect to the conduct of Sheriff Clark, there is nothing from which the Court may judge whether he has acted lawfully or unlawfully. Consequently, the Plaintiff has failed to meet the second burden placed upon him by the qualified immunity standard. It should be noted, however, that with respect to the policies these Defendants have put in place at the Covington County Jail, they have been found to be constitutional.

### III.    MOTION FOR SUMMARY JUDGMENT

#### A.    Summary Judgment Standard

On a motion for summary judgment, the court should view the evidence in the light most favorable to the nonmovant. Greason, 891 F.2d at 831. However, a plaintiff "must do more than show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Only reasonable inferences with a foundation in the record inure to the nonmovant's benefit. See Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133 (2000). "[T]he court should give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted or

unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'" Reeves, 530 U.S. at 151, quoting 9A C. Wright & A. Miller, Federal Practice and Procedure § 2529, p. 299.[2] "A reviewing court need not 'swallow plaintiff's invective hook, line and sinker; bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like need not be credited.'" Marsh v. Butler County, 268 F.3d 1014, 1036 n.16 (11th Cir. 2001) (en banc) quoting Massachusetts School of Law v. American Bar, 142 F.3d 26, 40 (1st Cir. 1998).

  B.  **Motion for Summary Judgment**

  The Defendants respectfully request that this honorable Court treat this Special Report as a motion for summary judgment and grant unto them the same.

  Respectfully submitted this 12th day of December, 2005.

               **s/Scott W. Gosnell**
               SCOTT W. GOSNELL, Bar Number: GOS002
               Attorney for Defendants
               WEBB & ELEY, P.C.
               7475 Halcyon Pointe Road (36117)
               P.O. Box 240909
               Montgomery, Alabama 36124
               Telephone: (334) 262-1850
               Fax: (334) 262-1889
               E-mail: sgosnell@webbeley.com

---

[2] Although Reeves was a review of a motion for judgment as a matter of law after the underlying matter had been tried, the Supreme Court, in determining the proper standard of review relied heavily on the standard for summary judgment stating, "the standard for granting summary judgment 'mirrors' the standard for judgment as a matter of law, such that 'the inquiry under each is the same.'" Reeves, 530 U.S. at 150, citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-251 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

**CERTIFICATE OF SERVICE**

    I hereby certify that on this the 12th day of December, 2005, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF and served the following Non-CM/ECF participant by United States Mail, postage prepaid:

Leonard E. Dorsey
Covington County Jail
290 Hillcrest Drive
Andalusia, Alabama  36420

                                         **s/Scott W. Gosnell**
                                         OF COUNSEL