IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

_____

LEONARD DORSEY .            *

    Plaintiff,               *

    v.                       *     2:05-CV-1034-ID
                                   (WO)
ANTHONY CLARK, *et al*.,     *

    Defendants.              *

_____

### **RECOMMENDATION OF THE MAGISTRATE JUDGE**

Plaintiff filed this 42 U.S.C. § 1983 action while incarcerated at the Covington County Jail.[1] He filed his complaint against Sheriff Anthony Clark and Deputy Kevin Smith, former interim jail administrator. In the complaint, Plaintiff alleges that Defendants subjected him to discrimination, placed him on lockdown without affording him due process, and failed to protect him from an inmate assault.

In accordance with the orders of the court, Defendants filed an answer, special report, and supporting evidentiary material in response to the allegations contained in the complaint. The court then informed Plaintiff that Defendants' special report may, at any time, be treated as a motion for summary judgment, and the court explained to Plaintiff the proper manner in which to respond to a motion for summary judgment. Plaintiff filed a response to the special report filed by Defendants. This case is now pending on Defendants'

---

[1] Since filing this action, Plaintiff has been released from custody.

motion for summary judgment. Upon consideration of such motion, the evidentiary materials filed in support thereof, and Plaint1iff's opposition to the motion, the court concludes that Defendants' motion for summary judgment is due to be granted.

## I. STANDARD OF REVIEW

To survive the properly supported motion for summary judgment filed by Defendants, Plaintiff is required to produce some evidence which would be admissible at trial supporting his constitutional claims. Rule 56(e), *Federal Rules of Civil Procedure*. Specifically, he must "go beyond the pleadings and ... designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). To meet this standard, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party. *Anderson v. Liberty Lobby,* 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)." *Walker v. Darby*, 911 F.2d 1573, 1576 -1577 (11th Cir. 1990). A plaintiff's conclusory allegations do not provide sufficient evidence to oppose a motion for summary judgment. *Harris v. Ostrout*, 65 F.3d 912 (11th Cir. 1995); *Fullman v. Graddick*, 739 F.2d 553, 556-557 (11th Cir. 1984). Thus, when a plaintiff fails to make a showing adequate to establish the existence of an element essential to his case, and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322; *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607 (11th Cir. 1987).

Where all the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates that there is no genuine issue of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex Corp.*, 477 U.S. at 322; *Everett v. Napper*, 833 F.2d 1507, 1510 (11th Cir. 1987); *Wright v. Southland Corp.,* 187 F.3d 1287 (11th Cir. 1999); *Pritchard v. Southern Co. Servs.,* 92 F.3d 1130, 1135 (11th Cir. 1996); *McMillian v. Johnson,* 88 F.3d 1573, 1584-1585 (11th Cir. 1996). Summary judgment is therefore appropriate when the pleadings, admissible evidentiary materials and affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), *Federal Rules of Civil Procedure*; *Eberhardt v. Waters*, 901 F.2d 1578, 1580 (11th Cir.1990).

Although factual inferences must be viewed in a light most favorable to the non-moving party, and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing a genuine issue of material fact. *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). In this case, Plaintiff has failed to demonstrate that there is a genuine issue of material fact in order to preclude summary judgment.

## II. DISCUSSION

*A. Injunctive Relief*

Plaintiff is no longer incarcerated at the Covington County Jail. The transfer or release of a prisoner renders moot any claims for injunctive or declaratory relief. *See County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979); *see also Cotterall v. Paul*, 755 F.2d 777, 780 (11th Cir. 1985) (past exposure to even illegal conduct does not in and of itself show a pending case or controversy regarding injunctive relief if unaccompanied by any continuing present injury or real and immediate threat of repeated injury). As it is clear from the pleadings and records before the court that Plaintiff is no longer housed at the county jail, any request for declaratory and/or injunctive relief has been rendered moot.

*B. Claims Against Defendants in their Official Capacity*

To the extent Plaintiff sues Defendants in their official capacity, they are immune from monetary damages. Official capacity lawsuits are "in all respects other than name, ... treated as a suit against the entity." *Kentucky v. Graham*, 473 U. S. 159, 166 (1985). Under all facets of Alabama law, a county sheriff and his jailers act as state officers "when supervising inmates and otherwise operating the county jails." *Turquitt v. Jefferson County, Alabama*, 137 F.3d 1285, 1289 (11th Cir. 1998); *see* Ala. Const. Art. V, § 112 (designates sheriff as member of State's executive department); *see also Parker v. Amerson*, 519 So.2d 442 (Ala. 1987) (county sheriff is executive officer of the State). "A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S.Ct.

900, 908, 79 L.Ed.2d 67 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, [517 U.S. 44, 59], 116 S.Ct. 1114, 1125, 134 L.Ed.2d 252 (1996). Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity. Therefore, Alabama state officials are immune from claims brought against them in their official capacities." *Lancaster v. Monroe County*, 116 F.3d 1419, 1429 (11th Cir. 1997).

In light of the foregoing, it is clear that Defendants are state officials entitled to Eleventh Amendment immunity when sued in their official capacity and are, therefore, entitled to absolute immunity from the claims asserted by Plaintiff against them in their official capacity.

C.  *The Individual Capacity Claims*

   i. *The Respondeat Superior Claim*

Plaintiff contends that Defendant Clark is liable for his "alleged injuries because he is in charge of the jail." (*Doc. No. 13 at 4-5*.) The law is well settled that an Alabama "Sheriff can have no respondeat superior [or vicarious] liability for a section 1983 claim." *Marsh v. Butler County*, 268 F.3d 1014, 1035 (11th Cir. 2001); *Miller v. King*, 384 F.3d 1248, 1261 (11th Cir. 2004) ("[S]upervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability."); *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir.2003) (concluding supervisory officials are not liable on the basis of respondeat superior or vicarious liability); *Hartley v.*

*Parnell*, 193 F.3d 1263, 1269 (11th Cir.1999), citing *Belcher v. City of Foley*, 30 F.3d 1390, 1396 (11th Cir. 1994) (42 U.S.C. § 1983 does not allow a plaintiff to hold supervisory officials liable for the actions of their subordinates under either a theory of respondeat superior or vicarious liability.); *Cook ex rel. Estate of Tessier v. Sheriff of Monroe County, Florida*, 402 F.3d 1092, 1115-1116 (11th Cir.2005) (In establishing liability under § 1983, a prisoner cannot rely on theories of vicarious liability or respondeat superior.). Thus, Defendant Clark is liable only if he "personally participate[d] in the alleged unconstitutional conduct or [if] there is a causal connection between [his] actions ... and the alleged constitutional deprivation." *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) (citation omitted). "'The causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so.' [*Hartley*, *supra*.] (quoting *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990)." *Gray*, 458 F.3d at 1308. To sufficiently notify the supervisor, the deprivations must not only be widespread, they also "must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." *Brown*, 906 F.2d at 671.

It is undisputed that Defendant Clark did not personally participate in any of the actions about which Plaintiff complains, and he denies any personal knowledge of the specific facts relative to the alleged violations of Plaintiff's constitutional rights. (*Doc. No. 8, Exh. B.*) ("I did not become aware of the allegations made the basis of the Plaintiff's complaint until I was served with it."). Further, Plaintiff has presented no probative evidence of obvious, flagrant or rampant abuse of continuing duration in the face of which Defendant

Clark failed to take corrective action. The court, therefore, concludes that the motion for summary judgment as to Plaintiff's claims against Defendant Clark on the basis of respondeat superior is due to be granted.

*ii. The Failure to Protect Claim*

On September 28, 2005 an inmate assaulted Plaintiff by striking him in the face. The assault caused Plaintiff to suffer a broken nose and cheek bone. He contends that Defendants failed to protect him from the assault even though he claims that he had put them on notice that he had problems with other inmates by filing grievances.

Correctional officials may be held liable under the Constitution for acting with "deliberate indifference" to an inmate's safety when the official knows that the inmate faces "a substantial risk of serious harm" and with such knowledge disregards that risk by failing to take reasonable measures to abate it. [2]  *Farmer v. Brennan*, 511 U.S. 825, 828 (1994).

---

[2] At the time the actions about which Plaintiff complains occurred, he was incarcerated in the Covington County Jail as a pretrial detainee. The Fourteenth Amendment, rather than the Eighth Amendment, provides the appropriate standard for assessing whether conditions of confinement imposed upon a pretrial detainee are violative of the Constitution. *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861 (1979); *Lancaster v. Monroe County, Ala.*, 116 F.3d 1419, 1425 n.6 (11th Cir. 1997); *Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir. 1996) ("Claims involving the mistreatment of arrestees or pretrial detainees in custody are governed by the Fourteenth Amendment's Due Process Clause...."). However, for analytical purposes, there is no meaningful difference between the analysis required by the Fourteenth Amendment and that required by the Eighth Amendment. *Hamm v. DeKalb County*, 774 F.2d 1567, 1574 (11th Cir. 1985); *Cottrell*, 85 F3d at 1490 ("[T]he applicable standard is the same, so decisional law involving prison inmates applies equally to cases involving arrestees or pretrial detainees."). Thus, this court will rely on cases interpreting the Eighth Amendment's prohibition against cruel and unusual punishment and not the Fourteenth Amendment's guarantee of due process when addressing Plaintiff's failure to protect claim because the standard for violations of the Eighth Amendment applies to pretrial detainees through the Due Process Clause of the Fourteenth Amendment. *Tittle v. Jefferson County Commission*, 10 F.3d 1535, 1539 (11th Cir. 1994) (observing "[w]hether the alleged violation is reviewed under the Eighth or Fourteenth Amendment is immaterial.").

"It is not, however, every injury suffered by one inmate at the hands of another that translates into a constitutional liability for prison officials responsible for the victim's safety." *Id.* at 834. A constitutional violation occurs only when a plaintiff establishes the existence of "a substantial risk of serious harm, of which the official is subjectively aware, ... and [that] the official does not respond[] reasonably to the risk'...." *Marsh v. Butler County*, 268 F.3d 1014, 1028 (11th Cir. 2001)(en banc), *quoting Farmer*, 511 U.S. at 844. Thus, in order to survive summary judgment on this claim, Plaintiff is "required to produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation. *LaMarca v. Turner*, 995 F.2d 1526, 1535 (11th Cir. 1993), *cert. denied*, 510 U.S. 1164, 114 S.Ct. 1189, 127 L.Ed.2d 539 (1994)." *Hale v. Tallapoosa County*, 50 F.3d 1579, 1582 (11th Cir. 1995).

> To be deliberately indifferent, Defendants must have been "subjectively aware of the substantial risk of serious harm in order to have had a '"sufficiently culpable state of mind."'" *Farmer,* 511 U.S. at 834-38, 114 S.Ct. at 1977-80; *Wilson v. Seiter,* 501 U.S. 294, 299, 111 S.Ct. 2321, 2324-25, 115 L.Ed.2d 271 (1991).... [T]he prison official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists--and the prison official must also "draw that inference." *Farmer*, 511 U.S. at 837, 114 S.Ct. at 1979.

*Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003).

Here, the record is devoid of evidence that Defendants were aware of a specific or general risk of an inmate attack on September 28, 2005. The evidentiary materials submitted by Defendants refute Plaintiff's conclusory allegation that they failed to protect him from a prisoner assault. Rather, the evidence before the court demonstrates that the attack on

Plaintiff constituted a purely random and sudden act that could not be anticipated or prevented by Defendants. There is simply no evidence that Defendants were aware of specific facts from which an inference could be drawn that a substantial risk of harm existed to Plaintiff, that they actually drew this inference, and thereafter ignored the attendant risk of harm. Plaintiff has also not presented any evidence that commingling of pre-trial detainees with state inmates was so obviously dangerous that to allow it to occur was deliberately indifferent. *See Jones v. Diamond*, 636 F.2d 1364 (5th Cir. 1981) (no *per se* constitutional right not to be housed with convicted prisoners exists), *overruled on other grounds by International Woodworkers v. Champion Int'l Corp.*, 790 F.2d 1174 (5th Cir. 1986), *aff'd sub. nom. Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437 (1987). Under the circumstances, it cannot be concluded that any act or omission of jail officials knowingly exposed Plaintiff to a substantial risk of serious harm. He has, therefore, failed to establish the requisite element of subjective awareness on the part of Defendants. *Carter*, 352 F.3d at 1350. Because the record fails to demonstrate that the assault on Plaintiff occurred due to any deliberate indifference or reckless disregard by Defendants with respect to Plaintiff's safety, summary judgment is due to be granted in their favor on the failure to protect claim. *See Celotex Corp.*, 477 U.S. at 322.

    *iii. The Due Process Claim*

    Plaintiff complains that following the inmate assault on September 28, 2005, Defendants placed him on lock down status until December 6, 2006 during which time he

had no privileges. The court understands Plaintiff to allege a violation of his right to due process as a result of this housing assignment.

Defendants deny that Plaintiff was placed on lock down status or in punitive detention. According to Defendant Smith, during his incarceration Plaintiff displayed an inability to get along with the other inmates at the county jail. Specifically, Defendant Smith personally witnessed Plaintiff's poor behavior which included his being aggressive, combative and an instigator of conflict with other inmates, a description that goes undisputed by Plaintiff. As a result of his poor adjustment to jail life, Plaintiff was placed in various cell blocks. (*Doc. No. 8, Exh. C - Smith Affidavit*.)

Initially, Defendant Smith put Plaintiff in A-Block and B-Block which housed a majority of general population inmates. Plaintiff, however, continued to aggressively confront the inmates in these cell blocks. Defendant Smith then tried housing Plaintiff in D-Block which is reserved for work-release inmates. These inmates are less inclined to be drawn in to any sort of incident for fear of losing their work release status. Within a short time of his placement on D-Block, however, the inmates advised Defendant Smith that they could not live with Plaintiff and if remained there, they would "run him out." Defendant Smith's remaining choice for Plaintiff's housing assignment was C-Block which is a detention block. This housing area is less crowded than the other cell blocks and, thus, offered Plaintiff fewer opportunities to engage other inmates in confrontations. Defendant Smith maintains that Plaintiff's placement in C-Block was not done for punitive reasons, but rather, for the safety of Plaintiff and the other inmates housed in the jail. Plaintiff was never

locked into a cell. Rather, while on C-Block he had access to the day room and its amenities. Although C-Block did not have a telephone or a television, Defendant Smith advised Plaintiff that he would provide him with access to a phone if he needed one. (*Doc. No. 8, Exh. C - Smith Affidavit*.)

In *Bell v. Wolfish*, 441 U.S. 520 (1979), the Supreme Court set forth the Constitutional framework for evaluating the due process claims of pretrial detainees. The Court held that the Due Process Clause prohibits the punishment of a pretrial detainee "prior to an adjudication of guilt in accordance with due process of law." *Id*. at 535. The Court recognized that not every condition imposed on a pretrial detainee amounts to impermissible punishment and determined the following:

> If a particular condition or restriction of pretrial detention is reasonably related to a legitimate government objective, it does not, without more, amount to "punishment." Conversely, if a restriction or condition is not reasonably related to a legitimate goal--if it is arbitrary or purposeless--a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees qua detainees.

*Id*. at 539. *See Magluta v. Samples*, 375 F.3d 1269, 1273 (11th Cir. 2004); *McMillian v. Johnson*, 88 F.3d 1554, 1564 (11th Cir. 1996). *See also Higgs v. Carver*, 286 F.3d 437, 438 (7th Cir. 2002) ("As long as the purpose was indeed a preventative rather than a punitive one, he would not be entitled to notice and a hearing."). Thus, the determination of whether Plaintiff was entitled to due process depends on whether his placement on C-Block was imposed for the purpose of punishment or whether it was incident to some legitimate government purpose. *Bell*, 441 U.S. at 538.

Other than his self-serving and conclusory allegations of constitutional violations, Plaintiff has failed to demonstrate that Defendants placed him on C-Block for punitive reasons. The undisputed evidence before the court reflects that Plaintiff made a poor adjustment to life in the county jail. As a result of his inability to adjust in a relatively peaceable fashion to jail life, Defendants ultimately placed Plaintiff in an area of the jail containing the fewest number of prisoners for his own safety as well as the safety of other inmates. This move represented a managerial decision made as a preventative measure rather than imposed for punitive purposes. Plaintiff was not locked down in a cell but rather, had access to a day room and the amenities it provided. Although C-Block had no television or telephone, Plaintiff had only to ask to use a telephone and one would have been provided. Of course, Plaintiff had no constitutionally protected interest in viewing television while incarcerated regardless of where he was housed. Because Plaintiff has failed to present a genuine issue of material fact as to whether he was moved to C-Block as punishment, Defendants' motion for summary judgment with respect to this due process claim should be granted. *Celotex Corp.*, 477 U.S. at 322.

*iv. The Equal Protection Claim*

The court understands Plaintiff to assert a claim that Defendants discriminated against him when they placed the inmate who attacked him on lock down status for only three days but kept him on lock down for over two months. As discussed in the preceding section, Plaintiff was not placed on lock down status. Rather, Defendants placed Plaintiff on C-Block for safety reasons and not as punishment. He had freedom of movement within

the entire cell block as well as the amenities available therein and access to a telephone upon request.

Equal protection principles require generally that government officials behave in a way such "that all persons similarly situated should be treated alike." *Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439 (1985). Thus, in order to establish a claim cognizable under the Equal Protection Clause, a plaintiff must, at the very least, allege that he is similarly situated with other persons who were treated differently and that the reason for the differential treatment was based on a constitutionally protected interest. *Jones v. Ray*, 279 F.3d 944, 947 (11th Cir. 2001); *Damiano v. Florida Parole and Probation Com'n*, 785 F.2d 929, 932-33 (11th Cir. 1986). Inconsistency in the operation of a prison may not, in itself, constitute a denial of equal protection. *Village of Arlington Heights v. Metropolitan Hous. Dev. Corp.*, 429 U.S. 252, 265-66 (1977); *Jones v. White*, 992 F.2d 1548, 1573 (11th Cir. 1993); *E & T Realty v. Strickland*, 830 F.2d 1107 (11th Cir. 1987).

> [O]fficial action will not be held unconstitutional solely because it results in a . . . disproportionate impact. . . . Proof of . . . discriminatory intent or purpose is required to show a violation of the Equal Protection Clause. Discriminatory purpose . . . implies more than intent as volition or intent as awareness of consequences. It implies that the decision maker . . . selected . . . a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group.

*Personnel Administrator of Mass. v. Feeney*, 442 U.S. 256, 279 (1979) (footnote and citation omitted); *see also Hernandez v. New York*, 500 U.S. 352, 359 (1991). Evidence which merely indicates disparity of treatment or erroneous or even arbitrary administration

13

of state powers, rather than instances of purposeful or invidious discrimination, is insufficient to show discriminatory intent. *McKleskey v. Kemp*, 481 U.S. 279, 292 (1987). Conclusory allegations or assertions of personal belief of disparate treatment or discriminatory intent are insufficient. *GJR Inv., Inc. v. County of Escambia,* 132 F.3d 1359, 1367-68 (11th Cir. 1998); *Coon v. Ga. Pac. Corp.,* 829 F.2d 1563, 1569 (11th Cir. 1987).

Inmates themselves do not constitute a suspect or quasi-suspect class entitling such persons to "strict scrutiny" of disparate government treatment. Here, what Plaintiff complains of is his displeasure with his assignment to C-Block where he was housed for over two months in comparison to his attacker's placement on lockdown status for three days. Plaintiff regards this conduct as actionable unequal treatment. Nevertheless, Plaintiff does not allege that he has been subjected to any tangible unequal treatment by Defendants' conduct such as his housing assignment being based upon a constitutionally protected interest. As a matter of law, therefore, the allegations supporting this claim, without more, do not rise to the level of a constitutional violation.

### III. CONCLUSION

In light of the foregoing, it is the RECOMMENDATION of the Magistrate Judge that:

1. Defendants' motion for summary judgment (*Doc. No. 8*) be GRANTED;

2. Judgment be ENTERED in favor of Defendants and against Plaintiff;

3. The costs of this proceeding be TAXED against Plaintiff for which execution may issue; and

    4.    This case be DISMISSED with prejudice.

It is further

ORDERED that the parties are DIRECTED to file any objections to the said Recommendation on or before **March 10, 2008**. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which a party objects. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done, this 26th day of February 2008.

                           /s/ Wallace Capel, Jr.
                           WALLACE CAPEL, JR.
                           UNITED STATES MAGISTRATE JUDGE